# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **VICKIE JOY FETTERMAN** *Administratrix of the ESTATE OF NATALEE KAY MIBRODA, Deceased*, <div align=center>**Plaintiff,**</div> <div align=center>v</div> **WESTMORELAND COUNTY CHILDREN'S BUREAU, CLAYTON MIBRODA, KAYLA JO LIGHTENFELS** *and* **BETTY JO LIGHTENFELS,** <div align=center>**Defendants.**</div> | ) ) ) ) ) ) ) ) ) ) ) )   **2:15-cv-773** |

## MEMORANDUM OPINION AND ORDER OF COURT

Now pending before the Court is the MOTION TO DISMISS (ECF No. 6) filed by

Defendant Westmoreland County Children's Bureau ("WCCB"), with brief in support. Plaintiff

Vickie Joy Fetterman ("Fetterman"), administratrix of the estate of Natalee Kay Mibroda ("Baby

Natalee"), filed a brief in opposition to WCCB's motion to dismiss and it is ripe for disposition.


Factual and Procedural Background

This case arises from the tragic death of an infant girl. As set forth in the Complaint,

Baby Natalee was born on December 7, 2011. She was six weeks premature and addicted to

opiates due to her mother's drug use during the pregnancy. Plaintiff Fetterman is the paternal

grandmother of Baby Natalee. The named Defendants, in addition to WCCB, are Baby

Natalee's parents (Kayla Jo Lightenfels and Clayton Mibroda) and the maternal grandmother,

Betty Jo Lichtenfels. [1]

---

[1] None of the other named Defendants have responded to the Complaint or entered an appearance in this Court.

As a result of the opiate addiction, Kimberly Chunko, a social worker from Indiana Regional Medical Center, opened a protective services investigation and contacted WCCB to inform the agency of the impending danger of leaving Baby Natalee in the custody of her parents. On December 8, 2011, WCCB assigned caseworker Deanna Supancic ("Supancic") to the matter, to determine whether a safety plan was needed for Baby Natalee. On December 9, 2011, Baby Natalee was discharged from the hospital under the care and control of her parents. The parents were homeless but staying at the home of Betty Jo Lichtenfels. On December 10, 2011, with the consent of the parents, Baby Natalee was placed in the custody of Fetterman.

On December 12, 2011, Supancic conducted a visit at the home of Betty Jo Lichtenfels. During the visit, Supancic learned that: Clayton Mibroda had a past criminal history and was on probation with Indiana County; that there were previous reports of domestic violence involving the parents; and that there had been a previous investigation/case with Indiana County Children and Youth Services ("ICCYS"). On December 13, Kim McCully, an ICCYS caseworker, performed a home visit and risk assessment at Fetterman's home. McCully instructed and ordered that Baby Natalee not be turned over to her parents. Complaint ¶ 44. Later that day, McCully informed Supancic of Fetterman's concerns for the safety of Caden Mibroda, the brother of Baby Natalee, who was living in the custody of Betty Jo Lichtenfels. Fetterman called Supancic several times and left messages to express her concerns regarding Baby Natalee's safety in the home of Betty Jo Lichtenfels. Supancic did not return the calls but did make a note of these concerns.

Fetterman also contacted Dr. Dwayne T. Shuhart, the pediatrician. Dr. Shuhart then called Supancic and Shannon Haywood, her supervisor at WCCB, to voice his concerns about Baby Natalee's safety if returned to her mother. In a December 15 phone call, Fetterman

informed Supanic that she had discovered cigarette burns on Caden Mibroda's legs while in the care of the parents.

Nevertheless, Supancic directed and ordered Baby Natalee to be removed from the care of Fetterman and placed in the home of Betty Jo Lichtenfels under the care, custody and control of Lichtenfels and the parents. Later that evening (presumably December 15), Baby Natalee was removed from Fetterman, over her protests. Complaint ¶¶ 61-62. The factual details of the transfer of custody of Baby Natalee have not been pled. Plaintiff alleges that WCCB failed to conduct an adequate risk assessment before ordering this action.

Plaintiff alleges that between December 15 and December 27, WCCB took no action to follow-up on the safety of Baby Natalee. Plaintiff alleges that Baby Natalee suffered repeated abuse during this time frame. On December 23, Kayla Jo Lichtenfels was hospitalized due to severe depression and extreme stress and stated that she did not care about her children. On December 27, Kayla Jo was again hospitalized for severe depression, but was not admitted.[2]

On December 27, 2011, Baby Natalee died. The autopsy showed that she suffered multifocal blunt force head trauma with massive subdural hemorrhage of the left hemisphere, bilateral hemorrhage of the optic nerves and retinas, fracture of the right clavicle, contusion of the upper lobe of the right lung, traumatic tear of the frenulum with resultant abscess and internal hemorrhage of the tongue.

Plaintiff filed the Complaint in this case in the Court of Common Pleas of Indiana County, Pennsylvania on May 28, 2015.[3] Plaintiff asserts the following claims: (1) at Count One, a Section 1983 claim for violation of substantive due process by WCCB; (2) at Count Two, a Section 1983 claim for municipal liability against WCCB; (3) at Count Three, a survival action

---

[2] There is no allegation in the Complaint that WCCB was aware of the hospitalizations or statement.
[3] WCCB noted that Plaintiff had previously filed a writ of summons in the state court. WCCB has not argued that the Complaint is untimely.

against WCCB pursuant to the Pennsylvania Survival Act, 42 Pa.C.S.A. § 8302; and at Counts Four and Five, survival actions against Betty Jo Lichtenfels, Clayton Mibroda and Kayla Jo Lichtenfels. The Complaint was timely and properly removed to this Court by WCCB on June 12, 2015. In the instant motion, WCCB moves to dismiss all claims against it.

Standard of Review

A motion to dismiss pursuant to Rule 12(b)(6) challenges the legal sufficiency of a complaint, which may be dismissed for the "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Upon review of a motion to dismiss, the Court must accept all well-pleaded facts and allegations, and must draw all reasonable inferences therefrom in favor of the plaintiff. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 220 (3d Cir. 2011), *cert. denied*, 132 S. Ct. 1861 (2012) (citing *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010)). However, as the Supreme Court of the United States has made clear in *Bell Atlantic Corp. v. Twombly*, such "[f]actual allegations must be enough to raise a right to relief above the speculative level." 550 U.S. 554, 555 (2007).

The Supreme Court later refined this approach in *Ashcroft v. Iqbal*, emphasizing the requirement that a complaint must state a plausible claim for relief in order to survive a motion to dismiss. 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 555). Nevertheless, "the plausibility standard is not akin to a 'probability requirement,'" but requires a plaintiff to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 555).

To determine the legal sufficiency of a complaint after *Twombly* and *Iqbal,* the United States Court of Appeals for the Third Circuit instructs that a district court must take a three step approach when presented with a motion to dismiss for failure to state a claim. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 n.7 (3d Cir. 2010) (noting that although *Iqbal* describes the process as a "two-pronged approach," it views the case as outlining three steps) (citing *Iqbal*, 556 U.S. at 675). First, "the court must "tak[e] note of the elements a plaintiff must plead to state a claim."" *Id.* at 130 (quoting *Iqbal*, 556 U.S. at 675) (alteration in original). Second, the court "should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). Third, "'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).

Accordingly, the Court must separate the factual and legal elements of the claim and "accept the factual allegations contained in the Complaint as true, but [ ] disregard rote recitals of the elements of a cause of action, legal conclusions, and mere conclusory statements." *James v. City of Wilkes-Barre*, 700 F.3d 675, 679 (3d Cir. 2012) (citing *Iqbal*, 556 U.S. at 678-79; *Twombly*, 550 U.S. at 555-57; *Burtch*, 662 F.3d at 220-21). The Court "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.' In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) (citing *Iqbal* 556 U.S. at 678). The determination for "plausibility" will be "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id*. at 211 (quoting *Iqbal*, 556 U.S. at 679).

However, nothing in *Twombly* or *Iqbal* changed the other pleading standards for a motion

to dismiss pursuant to Rule 12(b)(6) and the requirements of Rule 8 must still be met. *See Phillips v. Co. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (internal citations omitted). The Supreme Court did not abolish the Rule 12(b)(6) requirement that "the facts must be taken as true and a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on those merits." *Phillips,* 515 F.3d at 231 (citing *Twombly*, 550 U.S. at 553). Rule 8 also still requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 677-78 (citing Fed. R. Civ. P. 8(a)(2)). While this standard "does not require 'detailed factual allegations,' [ ] it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation" and a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 679 (quoting *Twombly*, 550 U.S. at 544-55). Simply put, Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

Legal Analysis

WCCB contends that it is not a "person" who is subject to suit under Section 1983 because it is merely a subunit of Westmoreland County. In addition, WCCB contends that the allegations of the Complaint do not state a cognizable substantive due process violation under the "state created danger," "special relationship," or "municipal liability" doctrines. Finally, WCCB argues that it is entitled to immunity from the Pennsylvania survival claim pursuant to the Pennsylvania Political Subdivision Tort Claims Act ("PTSTC"), 42 Pa.C.S.A. §§ 8541-8542.

In response, Plaintiff contends that WCCB is a "person" who can be sued under Section 1983. Plaintiff further asserts that she has alleged a cognizable Section 1983 claim under the

"state-created danger" theory.[4]  As to the municipal liability theory, Plaintiff contends that she

has adequately pled a "failure to train and supervise" claim.  Finally, Plaintiff argues that WCCB

is not immune from liability under the Pennsylvania PTSCA.  In the alternative, Plaintiff seeks

leave to amend the Complaint.  The Court will address these contentions seriatim.


1.  <u>Whether the WCCB is a "Person" Subject to Suit Under Section 1983</u>

As an initial matter, WCCB contends that it is not the proper Defendant.  The Court

agrees.  Plaintiff should have named Westmoreland County as the Defendant.  This precise issue

was addressed in *Walthour v. Child & Youth Servs.*, 728 F. Supp. 2d 628, 640-41 (E.D. Pa.

2010):

> the Court notes that departments of a county, e.g., the Delaware County
> Department of Children and Youth Services, do not have a separate corporate
> existence from the county and are therefore not entities capable of being sued
> under Section 1983.  <u>*Padilla v. Twp. of Cherry Hill,* 110 Fed.Appx. 272, 278 (3d
> Cir. 2004)</u>. In other words, the proper Defendant in this case would be Delaware
> County, rather than its Department of Children and Youth Services.

The same result is applicable in this case.  WCCB has no legal identity separate from

Westmoreland County and therefore it cannot be sued.  Accordingly, WCCB must be dismissed

as a party.  Nevertheless, because Plaintiff will have an opportunity to amend her Complaint, the

Court will address the substance of her arguments.


2.  <u>State-Created Danger Doctrine</u>

The general rule is that "a State's failure to protect an individual against private violence

simply does not constitute a violation of the Due Process Clause."  *Henry v. City of Erie*, 728

F.3d 275, 282 (3d Cir. 2013) (*quoting DeShaney v. Winnebago County Dept. of Social Servs.*,

---

[4] Plaintiff has withdrawn her claims based on the "special relationship" doctrine.  Plaintiff's Brief at 6 n.2.

489 U.S. 189, 197 (1989)).  However, there is a limited exception by which a municipal entity may, in theory, be held liable under Section 1983 pursuant to the "state-created danger" doctrine. As set forth in *Bright v. Westmoreland County*, 443 F.3d 276, 281 (3d Cir. 2006), the elements of this cause of action are:  (1) the harm ultimately caused was foreseeable and fairly direct; (2) a state actor acted with a degree of culpability that shocks the conscience; (3) a relationship between the state and the plaintiff existed such that "the plaintiff was a foreseeable victim of the defendant's acts," or a "member of a discrete class of persons subjected to the potential harm brought about by the state's actions," as opposed to a member of the public in general; and (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.  The Court will examine each of these elements in more detail.

A.  Foreseeable and Fairly Direct Result

As to the first element, the harm must be both "foreseeable" and a "fairly direct result" of the Defendant's conduct.  In *Phillips v. County of Allegheny*, 515 F.3d 224, 238 (3d Cir. 2008), the Court explained that a plaintiff must allege an awareness of risk that is sufficiently concrete to put the state actor on notice of the harm.  The foreseeability element may be satisfied by "unexpected or impulsive actions" and the state actor need not be aware that the person who directly caused the harm had a history of violence.  *Id*. at 237.  In *Henry*, the Court explained that the risk of fire to a tenant on an upper floor of a building without a smoke detector was foreseeable.  However, the *Henry* Court also concluded that the harm was not sufficiently direct.

"State actors are not liable every time their actions set into motion a chain of events that result in harm."  *Henry*, 728 F.3d at 283.  For example, a state is not liable for raising the speed

limit on a highway, even though it may be predictable that more crashes will occur. Lower courts must undertake a causation analysis. The *Henry* Court instructed: "To fulfill the "fairly direct" requirement of the state-created danger claim, the plaintiff must plausibly allege that state officials' actions "precipitated or were the catalyst for" the harm for which the plaintiff brings suit." *Id*. at 285. The Court further explained that the state action must cause the crisis to happen suddenly, unexpectedly, or too soon. *Id*. "It is insufficient to plead that state officials' actions took place somewhere along the causal chain that ultimately led to the plaintiff's harm." *Id*. In *Phillips*, the Court held that harm was fairly direct where the victim was an identifiable individual, rather than a random person with no known connection to the person causing the harm. 515 F.3d at 239.

The Court concludes that the Complaint, as pled, fails to allege sufficient facts to satisfy this element. The information known to WCCB did not rise to the level such that concrete harm to Baby Natalee was foreseeable. Kayla Jo Lichtenfels and Clayton Mibroda had less than spotless records, but there have been no facts pled to establish that either of them posed a particularized danger to Baby Natalee. There have been no facts pled regarding any danger posed by Betty Jo Lichtenfels. *Phillips* is distinguishable because the actor specifically told the dispatcher-defendants that he would make the victim pay. As pled, this case is more analogous to *Morse v. Lower Merion School Dist.*, 132 F.3d 902, 908 (3d Cir. 1997), in which the Court held that knowledge of a loiterer was not sufficiently concrete to put the school district on notice of the risk of violence. Moreover, although Baby Natalee was an identifiable victim, the harm was not "fairly direct" because there was a twelve-day gap in time between WCCB's alleged placement of the child and her ultimate death. *See, e.g., Fondrk v. Westmoreland County*, 2007 WL 4457141, at *6 (W.D. Pa. Dec. 16, 2007) (County's alleged failure to act not "fairly direct"

due to passage of time of fourteen months); *Hayes v. Erie County Office of Children & Youth*, 804 F. Supp. 2d 356, 395 & n. 15 (W.D. Pa. 2011) (harm not "foreseeable" because agency not aware of concrete risk that adoptive parent would be violent or abusive and likely not "fairly direct" due to passage of time). In sum, to adequately plead this narrow cause of action for municipal liability, it is incumbent on Plaintiff to set forth facts known to WCCB in advance regarding foreseeability and a fairly direct causal relationship between the municipal action and the harm to Baby Natalee rather than merely relying on 20/20 hindsight after a tragedy has occurred.

### B. Shocks the Conscience

To allege a cognizable violation of substantive due process, a plaintiff must establish that "the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Kaucher v. County of Bucks*, 455 F.3d 418, 425 (3d Cir. 2006). The measure of what shocks the conscience is a legal question and there is no clear, calibrated standard. At one end of the spectrum, "negligent behavior can never rise to the level of conscience shocking." *Id*. At the other end of the spectrum are state actions "intended to injure in some way unjustifiable by any government interest." *Id.* Between these extremes, the court must consider the context-specific circumstances of the particular case, including whether the state actor was under pressure and had to make split-second decisions. *Id.* (*quoting Smith I*, 318 F.3d at 509 ("[E]xcept in those cases involving either true split-second decisions or ... those in which officials have the luxury of relaxed deliberation, an official's conduct may create state-created danger liability if it exhibits a level of gross negligence or arbitrariness that shocks the conscience."). In *Ziccardi v. City of Philadelphia*, 288 F.3d 57, 66 (3d Cir. 2002), the Court

explained that in the context of a social worker <u>removing</u> children from their parents, the state actor must be "aware of more than a substantial risk—let us say a great risk—that there was no good cause for the removal of the children."

The facts, as pled, do not rise to the level of conscience-shocking. Child protection agencies face difficult dilemmas in these situations and must balance the rights of both children and parents. To override the parental interest the state must have some reasonable and articulable evidence giving rise to a reasonable suspicion that a child has been abused or is in imminent danger of abuse. *Croft v. Westmoreland County Children and Youth Services*, 103 F.3d 1123, 1126 (3d Cir. 1997). Removal of a child from parental custody without reasonable suspicion to believe ongoing parental custody presents a threat to the child's health or safety constitutes an arbitrary abuse of government power. *Id*. Thus, it is not sufficient for Plaintiff to contend, in hindsight, that WCCB made a bad decision to reunite Baby Natalee with her biological parents. Rather, Plaintiff must allege facts sufficient to establish that WCCB's actions were so faulty that they shock the conscience.

Although WCCB was aware of some risk due to the lifestyle of the parents and the concerns raised by Fetterman, there has been no allegation that WCCB had any concrete knowledge or expectation that Baby Natalee would be harmed. Moreover, after Baby Natalee was removed from Plaintiff, the allegations of the Complaint allege only negligence by WCCB, i.e., a failure to provide adequate oversight. It is clear as a matter of law that alleged negligence cannot shock the conscience. In sum, the Complaint falls far short of the "shocks the conscience" standard.

### C. Class of Persons Subjected to Harm

As to the third prong, the Court will assume that Baby Natalee was within the discrete class of persons subjected to the potential harm brought about by the alleged state action. WCCB is charged with responsibility to protect children from abuse and had advance knowledge of various concerns regarding the return of Baby Natalee to her parents/maternal grandmother. WCCB has not disputed this element of the cause of action.

### D. Exercise of Authority By State Actor

The fourth element requires Plaintiff to allege that the state actor affirmatively exercised its authority. WCCB contends that at most, Plaintiff has pled inaction and/or a failure to act. WCCB appears to deny that it took any affirmative action, such as physically seizing Baby Natalee from Fetterman. *See* WCCB Brief at 10. Plaintiff contends that this element of the cause of action is satisfied by the allegations in Paragraphs 60-64 of the Complaint which aver that at the affirmative direction and order of Supancic, "Baby Natalee was removed from the care, custody and control of Plaintiff." However, these averments are vague and conclusory. The Complaint does not set forth any facts regarding the "who, what, where, and when" of the actual removal or the reasons therefor. For example, it is unclear whether Supancic acted unilaterally, pursuant to a court order and/or at the request of the parents; whether the "order" was verbal or written; and whether Supancic was personally present at the transfer of custody. Indeed, it is unclear whether Betty Jo Lichtenfels or the parents received custody.

The Court concludes that Plaintiff has failed to plead sufficient facts regarding this element of the cause of action. If Plaintiff chooses to file an amended Complaint, she should

provide detailed, specific facts regarding the alleged affirmative act(s) of WCCB regarding the custody of Baby Natalee.

The case law authorities emphasize that it is difficult to establish municipal liability under these circumstances. The United States Supreme Court's decision in *DeShaney* is quite analogous to the facts of this case. In *DeShaney*, a young child was repeatedly beaten by his father; the county agency obtained a court order to place the child in temporary custody; but thereafter returned him to his father's custody. The agency checked on the child, but failed to take any affirmative action to protect him despite signs of abuse. Ultimately, beatings from the father caused severe brain damage to the child. Nevertheless, the United States Supreme Court held that the agency was not liable. The Court explained that although the state actor was aware of the danger to the child, it had not created the danger, nor had it done anything to render him more vulnerable to that danger. The Court specifically rejected the argument that the state could be held liable for its decision to return the child to its natural father, because the child was placed in no worse position than if the state had not acted at all. 489 U.S. at 201. *Accord Clark v. City of Philadelphia*, 2006 WL 2321574, at *4 (E.D. Pa. Aug. 8, 2006) ("City did not create a new danger; it simply returned [children] to the condition they would have been in had there never been an intervention in the first place.")

The same result is applicable in this case. Although what happened to Baby Natalee is a tragedy, the facts as pled in the Complaint do not establish a plausible claim that WCCB violated the substantive due process rights of Plaintiff. In accordance with the foregoing, the Court finds that the Complaint fails to state a viable claim under the narrow "state-created danger" doctrine. Accordingly, Count One of Plaintiff's Complaint will be dismissed.

### 3. Municipal Liability For Failure to Train and Supervise

In Count Two of the Complaint, Plaintiff asserts a "failure to train" theory. A municipality may be held vicariously liable for the unconstitutional actions of its agents when the agent's conduct was the result of a "municipal policy" or a "well-established custom." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Municipal liability under Section 1983 arises under three circumstances: (1) the individual acted pursuant to a formal government policy or a standard operating procedure long accepted within the government entity, (2) the individual himself has final policy-making authority such that his conduct represents official policy, or (3) a final policy-maker renders the individual's conduct official for liability purposes by having delegated to him authority to act or speak for the government, or by ratifying the conduct or speech after it has occurred. *Hill v. Borough of Kutztown*, 455 F.3d 225, 245 (3d Cir. 2006). This is a narrow theory that is difficult to establish. As explained by the United States Supreme Court in *City of Canton v. Harris*, 489 U.S. 378, 389-90 (1989): "Only where a municipality's failure to train its employees in relevant respects evidences a deliberate indifference to the rights of its inhabitants may such a shortcoming be properly thought of as a policy or custom that is actionable under § 1983." *Id.* "Deliberate indifference can be shown where the need for more or different training is so obvious, and the inadequacy is so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need." *Id*.

The Complaint in this case has wholly failed to set forth any actual facts to support a "failure to train" theory. Instead, Plaintiff baldly and conclusorily claims that WCCB has tolerated a dangerous pattern of incompetent, dysfunctional and grossly negligent handling of

reports of suspected child abuse; that caseloads are too high; and that caseworkers have not received the training and/or supervision necessary to perform appropriate investigations. Such vague and generalized accusations, without any supporting facts, fail to meet the *Twombly/Iqbal* pleading standard. Among other flaws, Plaintiff has failed to identify a specific policy or custom; specific knowledge and acquiescence by a municipal decision-maker; a pattern of prior incidents; or any other facts by which Westmoreland County's policies may amount to a constitutional violation. *See generally McTernan v. City of York*, 564 F.3d 636, 658-59 (3d Cir. 2009).

Nor has Plaintiff pled a cognizable claim under the "single violation" theory. As explained in *Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 409 (1997):

> in a narrow range of circumstances, [whereby] a violation of federal rights may be a highly predicable consequence of a failure to equip law enforcement officers with specific tools to handle recurrent situations. The likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights could justify a finding that policymakers' decision not to train the officer reflected "deliberate indifference" to the obvious consequence of the policymakers' choice—namely, a violation of a specific constitutional or statutory right.

However, the United States Supreme Court cautioned that to prevent municipal liability "from collapsing into respondeat superior liability, a court must carefully test the link between the policymaker's inadequate decision and the particular injury alleged." *Id.* at 410. Plaintiff cites to only one case law authority, *Foulke v. McCloud*, 2014 WL 47726, at *6 (D.N.J. Jan. 7, 2014), which permitted a similar claim to survive. *Foulke*, however, is not persuasive because: (1) the opinion contained little analysis (indeed, the Court rejected Foulke's "failure to train" theory); and (2) the issue before the Court was whether the complaint should have been dismissed *sua sponte* as frivolous. For the reasons set forth above, the Court concludes that Fetterman has

failed to plead the requisite link between an alleged inadequate decision by a policymaker and the harm suffered by Baby Natalee.

If Plaintiff seeks to pursue a municipal liability "failure to train" claim in an amended complaint, she must provide considerably more factual support to render such a claim plausible. Accordingly, Count Two of Plaintiff's Complaint will be dismissed.

4.  Pennsylvania State Law Claims

In Count Three, Plaintiff asserts a survival claim against WCCB under Pennsylvania law. WCCB contends that it is entitled to immunity from the survival claim, also relying on Pennsylvania law. Counts Four and Five of the Complaint also assert survival claims under Pennsylvania law between citizens of Pennsylvania. None of the Defendants named in these counts have appeared in this Court.

Jurisdiction over supplemental state law claims is governed by 28 U.S.C. § 1367(a), which provides that "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." However, the Court has discretion to decline to exercise supplemental jurisdiction, if it "has dismissed all claims over which it has original jurisdiction," or if "in exceptional circumstances, there are compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c)(3), (4). As to (c)(3), "the district court must decline to decide the pendant state claims unless considerations of judicial economy, convenience and fairness to the parties provide an affirmative justification for [exercising supplemental jurisdiction] ." *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000)

(emphasis in original). As to (c)(4), a court must evaluate "economy, convenience, fairness, and comity." *Mathis v. Camden County*, 2009 WL 4667094 at *9 (D.N.J. 2009).

For the reasons set forth above, the Court will dismiss all claims in the Complaint over which it has original jurisdiction. Therefore, the Court "must" decline to exercise supplemental jurisdiction over the pendant state law claims set forth in the original Complaint. The Court notes that the (c)(4) considerations also weigh in favor of declining supplemental jurisdiction.

5. Leave to Amend

Plaintiff has requested leave to file an amended complaint to cure any deficiencies in her pleading. Leave to amend should be liberally granted. Indeed, if a civil rights complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile. *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004); *accord Grayson v. Mayview State Hosp.*, 293 F.3d 103 (3d Cir. 2002). A district court must provide the plaintiff with this opportunity even if the plaintiff does not seek leave to amend. *Id*.

The Court will permit Plaintiff one opportunity to file an Amended Complaint. However, the Court is unlikely to permit any subsequent amendments. If Plaintiff chooses to file an Amended Complaint, it will be critically important to address the shortcomings previously discussed to assure that the Amended Complaint contains sufficient factual allegations to render the claim(s) plausible in compliance with the pleading standard set forth and explained in *Twombly* and *Iqbal*. If the Plaintiff again asserts state law claims, the Court will re-evaluate its supplemental jurisdiction as explained above and will determine whether such claims should be remanded to the state court.

<u>Conclusion</u>

In accordance with the foregoing, the MOTION TO DISMISS (ECF No. 6) filed by Defendant Westmoreland County Children's Bureau will be **GRANTED**. Counts One and Two of the Complaint will be **DISMISSED**. The Court will decline to exercise supplemental jurisdiction over Counts Three, Four and Five of the Complaint.

On or before September 10, 2015, Plaintiff shall file either: (1) an Amended Complaint; or (2) a notice of her intent to stand on the original complaint and be remanded to the state court.

An appropriate Order follows.


McVerry, S.J.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **VICKIE JOY FETTERMAN** <br> *Administratrix of the ESTATE OF NATALEE KAY MIBRODA, Deceased*, <br> Plaintiff, <br><br> v <br><br> **WESTMORELAND COUNTY CHILDREN'S BUREAU, CLAYTON MIBRODA, KAYLA JO LIGHTENFELS** *and* **BETTY JO LIGHTENFELS,** <br> Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    **2:15-cv-773** |

**ORDER OF COURT**

AND NOW, this 20th day of August 2015, in accordance with the foregoing

Memorandum Opinion, it is hereby **ORDERED, ADJUDGED and DECREED** that

the MOTION TO DISMISS (ECF No. 6) filed by Defendant Westmoreland County Children's

Bureau is **GRANTED.** Counts One and Two of Plaintiff's Complaint are **DISMISSED.** The

Court declines to exercise supplemental jurisdiction over Counts Three, Four and Five of the

Complaint.

On or before September 10, 2015, Plaintiff shall file either: (1) an Amended Complaint;

or (2) a notice of her intent to pursue the remaining counts of the original complaint in state

court.

BY THE COURT:

s/Terrence F. McVerry
Senior United States District Judge

cc:    **Brian D. Kent, Esquire**
      Email: bkent@lbk-law.com

      **Thomas P. Pellis, Esquire**
      Email: tpellis@mdbbe.com