# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VICKIE JOY FETTERMAN, *Administratrix of the ESTATE OF NATALEE KAY MIBRODA, Deceased*, <br>           Plaintiff, <br><br> v <br><br> WESTMORELAND COUNTY CHILDREN'S BUREAU, WESTMORELAND COUNTY, DEANNA SUPANCIC, individually and as an employee of WCCB, SHANNON HAYWOOD, individually and as an employee of WCCB, CLAYTON MIBRODA, KAYLA JO LIGHTENFELS *and* BETTY JO LIGHTENFELS, <br>           Defendants. | 2:15-cv-773 |

## MEMORANDUM OPINION AND ORDER OF COURT

Now pending before the Court is the MOTION TO DISMISS THE FIRST AMENDED COMPLAINT (ECF No. 19) filed by Defendants Westmoreland County Children's Bureau ("WCCB"), Westmoreland County, Deanna Supancic and Shannon Haywood (collectively, the "WCCB Defendants"), with brief in support. Plaintiff Vickie Joy Fetterman ("Fetterman"), administratrix of the estate of Natalee Kay Mibroda ("Baby Natalee"), filed a brief in opposition to the WCCB Defendants' motion to dismiss and it is ripe for disposition.

Procedural History

Plaintiff filed a praecipe for writ of summons in the Court of Common Pleas of Indiana County, Pennsylvania on December 24, 2013. The cover sheet filed with the writ of summons identified the nature of the case as wrongful death and negligence under Pennsylvania law. Plaintiff filed the original Complaint in this case in the Court of Common Pleas of Indiana County, Pennsylvania on May 28, 2015. The Complaint was properly removed to this Court by

WCCB on June 12, 2015 because Plaintiff asserted federal civil rights claims under Section 1983. In addition to WCCB, the original Complaint named as Defendants only Clayton Mibroda (the father), Kayla Jo Lichtenfels (the mother) and Betty Jo Lichtenfels (the maternal grandmother) (collectively, the "Family Defendants"). The Family Defendants have not responded to either the original or Amended Complaint nor entered an appearance in this Court. On August 20, 2015, the Court granted Defendant WCCB's motion to dismiss all claims against it. The Court provided Plaintiff with the opportunity to either file an Amended Complaint or to pursue her claims against the Family Defendants in the state court.

Plaintiff filed an Amended Complaint on September 10, 2015. Notably, Plaintiff has named three additional Defendants, WCCB case worker Deanna Supancic ("Supancic"), her WCCB supervisor, Shannon Haywood ("Haywood"), and Westmoreland County. They were served with the Amended Complaint on October 2, 2015. Supancic, Haywood and Westmoreland County contend that the statute of limitations has expired.

Plaintiff asserts the following claims in the Amended Complaint: (1) at Count One, a Section 1983 claim for violation of substantive due process by the Westmoreland County Defendants (state-created danger theory); (2) at Count Two, a survival action against the Westmoreland County Defendants pursuant to the Pennsylvania Survival Act, 42 Pa.C.S.A. § 8302; and at Counts Three and Four, survival actions against Betty Jo Lichtenfels, Clayton Mibroda and Kayla Jo Lichtenfels. The Amended Complaint does not assert a claim for municipal liability against WCCB/Westmoreland County.[1] In the instant motion, the Westmoreland County Defendants move to dismiss all claims against them.

---

[1] Nevertheless, Plaintiff's brief contains a lengthy section on municipal liability. *See* ECF No. 24 at 16-19.

Factual Background

The Amended Complaint contains several additional averments, in an effort to remedy the deficiencies in the original Complaint that were identified by the Court in its August 20, 2015 Memorandum Opinion. This case arises from the tragic, violent death of a twenty-day-old infant girl. Baby Natalee was born on December 7, 2011. She was six weeks premature and addicted to opiates due to her mother's drug use during the pregnancy. Plaintiff Fetterman is the paternal grandmother of Baby Natalee.

As a result of the opiate addiction, Kimberly Chunko, a social worker from Indiana Regional Medical Center, opened a protective services investigation. Chunko found that Baby Natalee's safety was at risk because her caregivers (her parents) "cannot or will not control their behavior" and had full access to the child. Chunko contacted WCCB to inform the agency of the impending danger of leaving Baby Natalee in the custody of her parents. On December 8, 2011, WCCB assigned caseworker Supancic to the matter, to determine whether a safety plan was needed for Baby Natalee.

On December 9, 2011, Baby Natalee was discharged from the hospital under the care and control of her parents. Amended Complaint ¶ 40. The parents were homeless but staying at the home of Betty Jo Lichtenfels in Westmoreland County. Allegedly, Kayla Jo continued to suffer from a mental breakdown and was not able to care for Baby Natalee. Therefore, on December 10, 2011, Kayla Jo gave custody of Baby Natalee to Fetterman, who lives in Indiana County. There are no averments regarding an official transfer of legal custody to Plaintiff, nor any involvement by the WCCB Defendants in the transfer of custody to Fetterman.

On December 12, 2011, Supancic conducted a visit at the home of Betty Jo Lichtenfels. During the visit, Supancic learned that: Clayton Mibroda had a past criminal history and was on

probation with Indiana County; that there were previous reports of domestic violence involving the parents; and that there had been a previous investigation/case with Indiana County Children and Youth Services ("ICCYS").

On December 13, Kim McCully, an ICCYS caseworker, performed a home visit and risk assessment at Fetterman's home. McCully instructed and ordered that Baby Natalee not be turned over to her parents. Amended Complaint ¶ 47. Later that day, McCully informed Supancic of Fetterman's concerns for the safety of Caden Mibroda, the brother of Baby Natalee, who was living in the custody of Betty Jo Lichtenfels. McCully performed a risk assessment in which she noted that "risk may be higher if child was with natural parents." Amended Complaint ¶ 49.

Fetterman called Supancic several times and left messages to express her concerns regarding the safety of Caden Mibroda and Baby Natalee while in the home of Betty Jo Lichtenfels. Supancic did not return the calls but did make a note of these concerns. Fetterman also left a message for Shannon Haywood, Supancic's supervisor at WCCB.

Fetterman also contacted Dr. Dwayne T. Shuhart, the pediatrician. Dr. Shuhart then called Supancic and Haywood, to voice his concerns about Baby Natalee's safety if returned to her mother. In a December 15 phone call, Fetterman informed Supanic that she had discovered cigarette burns on Caden Mibroda's legs while in the care of the parents and that Kayla Jo Lichtenfels had mental health issues that had prevented her from being able to care for her children in the past. Fetterman informed Supancic that Caden and Baby Natalee would be in danger if they were in the custody of the parents. Supancic told Plaintiff that she would not discuss the issue with her and that the job of WCCB was to keep the family together.

4

Supancic directed and ordered Baby Natalee to be removed from the care of Fetterman and placed in the care, custody and control of the parents. As pled, Supancic's "direct order" occurred during a telephone call with Fetterman on December 15 and was unilateral; contrary to the direct order of ICCYS caseworker McCully; and without jurisdiction. Plaintiff does not explain why she complied with Supancic's alleged directive. As now pled, the parents came to Fetterman's home later that evening and she gave custody of Baby Natalee to them. No person from WCCB was present at the time. Amended Complaint ¶ 66.

Plaintiff alleges that between December 15 and December 27, WCCB took no action to follow-up on or assess the safety of Baby Natalee, despite Plaintiff's numerous phone calls. Plaintiff alleges that Baby Natalee suffered repeated abuse during this time frame. On December 23, Kayla Jo Lichtenfels was hospitalized due to severe depression and extreme stress and stated that she did not care about her children. On December 27, Kayla Jo went again to the hospital for severe depression, but was not admitted.[2]

On December 27, 2011, Baby Natalee died. The autopsy showed that she suffered multi-focal blunt force head trauma with massive subdural hemorrhage of the left hemisphere, bilateral hemorrhage of the optic nerves and retinas, fracture of the right clavicle, contusion of the upper lobe of the right lung, traumatic tear of the frenulum with resultant abscess and internal hemorrhage of the tongue.

Plaintiff alleges, conclusorily, that Supancic and Haywood were undertrained, that WCCB caseloads were excessive and that the death of Baby Natalee was a result of their alleged deliberate indifference.

---

[2] There is no allegation in the Amended Complaint that WCCB was aware of the hospitalizations or statement.

Standard of Review

A motion to dismiss pursuant to Rule 12(b)(6) challenges the legal sufficiency of a complaint, which may be dismissed for the "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Upon review of a motion to dismiss, the Court must accept all well-pleaded facts and allegations, and must draw all reasonable inferences therefrom in favor of the plaintiff. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 220 (3d Cir. 2011), *cert. denied*, 132 S. Ct. 1861 (2012) (citing *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010)). However, as the Supreme Court of the United States has made clear in *Bell Atlantic Corp. v. Twombly*, such "[f]actual allegations must be enough to raise a right to relief above the speculative level." 550 U.S. 554, 555 (2007).

The Supreme Court later refined this approach in *Ashcroft v. Iqbal*, emphasizing the requirement that a complaint must state a plausible claim for relief in order to survive a motion to dismiss. 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 555). Nevertheless, "the plausibility standard is not akin to a 'probability requirement,'" but requires a plaintiff to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 555).

To determine the legal sufficiency of a complaint after *Twombly* and *Iqbal,* the United States Court of Appeals for the Third Circuit instructs that a district court must take a three step approach when presented with a motion to dismiss for failure to state a claim. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 n.7 (3d Cir. 2010) (noting that although *Iqbal* describes the process as a "two-pronged approach," it views the case as outlining three steps) (citing *Iqbal*,

556 U.S. at 675). First, "the court must "tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* at 130 (quoting *Iqbal*, 556 U.S. at 675) (alteration in original). Second, the court "should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). Third, "'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).

Accordingly, the Court must separate the factual and legal elements of the claim and "accept the factual allegations contained in the Complaint as true, but [ ] disregard rote recitals of the elements of a cause of action, legal conclusions, and mere conclusory statements." *James v. City of Wilkes-Barre*, 700 F.3d 675, 679 (3d Cir. 2012) (citing *Iqbal*, 556 U.S. at 678-79; *Twombly*, 550 U.S. at 555-57; *Burtch*, 662 F.3d at 220-21). The Court "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.' In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) (citing *Iqbal* 556 U.S. at 678). The determination for "plausibility" will be "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id*. at 211 (quoting *Iqbal*, 556 U.S. at 679).

However, nothing in *Twombly* or *Iqbal* changed the other pleading standards for a motion to dismiss pursuant to Rule 12(b)(6) and the requirements of Rule 8 must still be met. *See Phillips v. Co. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (internal citations omitted). The Supreme Court did not abolish the Rule 12(b)(6) requirement that "the facts must be taken as true and a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on those merits." *Phillips,* 515 F.3d at 231 (citing

7

*Twombly*, 550 U.S. at 553). Rule 8 also still requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 677-78 (citing Fed. R. Civ. P. 8(a)(2)). While this standard "does not require 'detailed factual allegations,' [ ] it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation" and a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 679 (quoting *Twombly*, 550 U.S. at 544-55). Simply put, Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

Legal Analysis

    A. Statute of Limitations as to Newly-Named Defendants

The Court must first consider whether the claims against the Defendants newly-named in the Amended Complaint (Supancic, Haywood and Westmoreland County) are cognizable. The statute of limitations for § 1983 claims and survival claims is two years. *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009); 42 Pa.C.S. § 5524(2). Baby Natalee died on December 7, 2011. The Amended Complaint was filed on September 10, 2015. Thus, on their face, the claims against the newly-named Defendants are untimely.

Plaintiff contends that the claims are timely because they "relate back" to the original Complaint pursuant to Fed. R. Civ. P. 15(c). To add a new party under Rule 15(c), a plaintiff must establish: (1) that the amended pleading relates to the same conduct or transaction or occurrence set forth in the original complaint; (2) that within the 120–day time period prescribed by Rule 4(m), the proposed new defendant had notice of the action; **and** (3) that the proposed new defendant(s) knew or should have known that but for a mistake of identity, she or it would

8

have been named in the initial complaint. *Ferencz v. Medlock*, 905 F. Supp. 2d 656, 666 (W.D. Pa. 2012) (emphasis added). The burden is on Plaintiff to establish each of these elements. *Id.*

"When the original complaint and the plaintiff's conduct compel the conclusion that the failure to name the prospective defendant in the original complaint was the result of a fully informed decision as opposed to a mistake concerning the proper defendant's identity, the requirements of Rule 15(c)(1)(C)(ii) are not met." *Id.* (*quoting Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538 (2010)). In *Krupski*, the Supreme Court stated: "We agree that making a deliberate choice to sue one party instead of another while fully understanding the factual and legal differences between the two parties is the antithesis of making a mistake concerning the proper party's identity." 560 U.S. at 549. The Court explained: "A prospective defendant who legitimately believed that the limitations period had passed without any attempt to sue him has a strong interest in repose. But repose would be a windfall for a prospective defendant who understood, or who should have understood, that he escaped suit during the limitations period *only because the plaintiff misunderstood a crucial fact about his identity.*" *Id.* at 550 (emphasis added). In *Garvin v. City of Philadelphia*, 354 F.3d 215, 221–22 (3d Cir. 2003), the United States Court of Appeals for the Third Circuit stated: "Of course, an amended complaint will not relate back if the plaintiff had been aware of the identity of the newly named parties when she filed her original complaint and simply chose not to sue them at that time."

Plaintiff fully understood the status and role of Supancic and Haywood in the events giving rise to the claim at issue. There is no evidence that Plaintiff misunderstood any crucial fact about their identities. Plaintiff has pled substantial facts regarding their conduct and her contacts with Supancic and Haywood in December 2011. By all reasonable appearances,

9

Plaintiff made an informed and deliberate choice to not sue them. Accordingly, Supancic and Haywood have a strong interest in repose and will be dismissed as parties.

The Court reaches a different result as to Westmoreland County. As explained in the Court's August 20 Memorandum Opinion, Plaintiff made a mistake as to the correct party to be sued. She should have named the County as a Defendant because WCCB is only a subunit of the County and has no separate legal identity. *Walthour v. Child & Youth Servs.*, 728 F. Supp. 2d 628, 640-41 (E.D. Pa. 2010).[3] This issue was briefed in the original motion to dismiss and it is clear that Westmoreland County was "on notice" that it would have been sued in the original Complaint but for this mistake as to legal identity. *See Garvin*, 354 F.3d at 227 (notice imputed through identity of interest). Thus, the claims against Westmoreland County relate back; are timely; and will be addressed on their merits.

　　1. State-Created Danger Doctrine

The general rule is that "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *Henry v. City of Erie*, 728 F.3d 275, 282 (3d Cir. 2013) (*quoting DeShaney v. Winnebago County Dept. of Social Servs.*, 489 U.S. 189, 197 (1989)). However, there is a limited exception by which a municipal entity may, in theory, be held liable under Section 1983 pursuant to the "state-created danger" doctrine. As set forth in *Bright v. Westmoreland County*, 443 F.3d 276, 281 (3d Cir. 2006), the elements of this cause of action are: (1) the harm ultimately caused was foreseeable and fairly direct; (2) a state actor acted with a degree of culpability that shocks the conscience; (3) a relationship between the state and the plaintiff existed such that "the plaintiff was a foreseeable victim of the defendant's acts," or a "member of a discrete class of persons subjected to the potential harm brought about by the state's actions," as opposed to a member of the public in general; and (4) a

---

[3] The Court adheres to this conclusion and WCCB will be dismissed as a party.

state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

      A. Shocks the Conscience

To allege a cognizable violation of substantive due process, a plaintiff must establish that "the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Kaucher v. County of Bucks*, 455 F.3d 418, 425 (3d Cir. 2006). The measure of what shocks the conscience is a legal question and there is no clear, calibrated standard. At one end of the spectrum, "negligent behavior can never rise to the level of conscience shocking." *Id*. At the other end of the spectrum are state actions "intended to injure in some way unjustifiable by any government interest." *Id.* Between these extremes, the court must consider the context-specific circumstances of the particular case, including whether the state actor was under pressure and had to make split-second decisions. *Id*. (*quoting Smith I*, 318 F.3d at 509 ("[E]xcept in those cases involving either true split-second decisions or ... those in which officials have the luxury of relaxed deliberation, an official's conduct may create state-created danger liability if it exhibits a level of gross negligence or arbitrariness that shocks the conscience."). In *Sanford v. Stiles*, 456 F.3d 298, 310 (3d Cir.2006), the Court explained that in "situations in which there is some urgency and only hurried deliberation is practical, but immediate or split-second decision making is not required, defendants must disregard a great risk of serious harm rather than a substantial risk."

The facts, as pled in this action, do not rise to the level of conscience-shocking. Child protection agencies face difficult dilemmas in these situations and must balance the rights of both children and parents. It is not sufficient for Plaintiff to contend, in hindsight, that WCCB made a bad decision to reunite Baby Natalee with her biological parents. Nor is WCCB liable simply

11

because it ignored multiple warnings. Such warnings should trigger an investigation. A precipitous removal of a child from parental custody without reasonable suspicion to believe ongoing parental custody presents a threat to the child's health or safety may constitute an arbitrary abuse of government power. *Croft v. Westmoreland County Children and Youth Services*, 103 F.3d 1123, 1126 (3d Cir. 1997). Plaintiff must allege facts sufficient to establish that WCCB's actions were so faulty that they shock the conscience and rise to the level of a constitutional violation of substantive due process.

WCCB was aware of some generalized risk to Baby Natalee due to the lifestyle of the parents, the past alleged abuse of Caden, and the other concerns and warnings communicated by Fetterman, McCully and Dr. Shuhart. Unfortunately, those warnings came true. However, there has been no allegation that WCCB had any concrete knowledge or specific expectation that Baby Natalee would be harmed by her parents. Moreover, after Baby Natalee was reunited with her parents, the allegations of the Complaint allege only negligence by WCCB, i.e., a failure to provide adequate oversight. It is clear as a matter of law that alleged negligence cannot shock the conscience. In sum, the Amended Complaint falls short of the standard of "shocks the conscience."

### B. Exercise of Authority By State Actor

The fourth element of the state-created danger theory requires Plaintiff to allege that the state actor affirmatively exercised its authority. WCCB contends that at most, Plaintiff has pled inaction and/or a failure to act. WCCB denies that it took any affirmative action, such as physically seizing Baby Natalee from Fetterman.

To summarize the factual scenario, as described in the Amended Complaint: (1) Baby Natalee was born on December 7, 2011; (2) on December 9, the hospital discharged Baby

Natalee into the custody of the parents; (3) on December 10, Kayla Jo gave custody of Baby Natalee to Fetterman[4]; (4) on December 13, ICCYS caseworker McCully told Fetterman to not give Baby Natalee back to the parents; (5) on December 15, WCCB caseworker Supancic verbally instructed Fetterman, on a telephone call, to give Baby Natalee back to the parents. Thus, Plaintiff allegedly faced contradictory orders from ICCYS caseworker McCully and WCCB caseworker Supancic; and (6) later on December 15, the parents came to Fetterman's home and she gave Baby Natalee back to them. No WCCB personnel were present at the exchange. Plaintiff, who lives in Indiana County, does not explain why she complied with Supancic's alleged verbal directive, which Plaintiff alleges was without jurisdiction. Amended Complaint ¶ 63.

Baby Natalee was never in the physical custody of WCCB. Nor did WCCB take any affirmative steps to legally place Baby Natalee into the custody of the parents. That occurred in a private exchange at Plaintiff's home. WCCB did not place Baby Natalee in a more dangerous situation because of a misuse of its authority, but rather, WCCB allegedly failed to intervene to prevent the harm to Baby Natalee caused by the parents of the child. The Court is not convinced that a telephonic directive from a caseworker, to a person in a different County, constitutes sufficient affirmative use of authority to satisfy this prong of the "state-created danger" test.[5] *See Weston v. City of Philadelphia*, 82 F. Supp.3d 637, 646 (E.D. Pa. 2015) (cases are legion in which a child is abused; the CYS system should have done more; but those failures do not arise to a constitutional violation).

---

[4] The Amended Complaint does not plead any factual details regarding this alleged transfer of custody.
[5] The Court makes no findings regarding the "foreseeable harm" and "foreseeable victim" factors of the state-created danger test.

C. The United States Supreme Court's Decision in *DeShaney*

In *DeShaney*, 489 U.S. at 202, the United States Supreme Court cautioned: "the Due Process Clause of the Fourteenth Amendment, [ ] as we have said many times, does not transform every tort committed by a state actor into a constitutional violation." The decision in *DeShaney* is quite analogous to the facts of this case – the state actor in *DeShaney* had more involvement than has been alleged in this case. In *DeShaney*, a young child was repeatedly beaten by his father; the county agency obtained a court order to place the child in temporary custody; but thereafter returned him to his father's custody. The agency checked on the child, but failed to take any affirmative action to protect him despite signs of abuse. Ultimately, beatings from the father caused severe brain damage to the child. Nevertheless, the United States Supreme Court held that the agency was not liable. The Court explained that although the state actor was aware of the danger to the child, it had not created the danger, nor had it done anything to render him more vulnerable to that danger. The Court specifically rejected the argument that the state could be held liable for its decision to return the child to its natural father, because the child was placed in no worse position than if the state had not acted at all. 489 U.S. at 201. *Accord Clark v. City of Philadelphia*, 2006 WL 2321574, at *4 (E.D. Pa. Aug. 8, 2006) ("City did not create a new danger; it simply returned [children] to the condition they would have been in had there never been an intervention in the first place.")

The same result is applicable in this case. The death of Baby Natalee is a tragedy. However, the facts as pled in the Complaint do not establish a plausible claim that Defendants violated the constitutional substantive due process rights of Plaintiff. In accordance with the foregoing, the Court finds that the Amended Complaint fails to state a viable claim under the

narrow "state-created danger" doctrine. Accordingly, Count One of Plaintiff's Amended Complaint will be dismissed.

2. Pennsylvania State Law Claims

Counts 2, 3 and 4 of the Amended Complaint assert survival claims under Pennsylvania law between citizens of Pennsylvania. Jurisdiction over supplemental state law claims is governed by 28 U.S.C. § 1367(a), which provides that "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." However, the Court has discretion to decline to exercise supplemental jurisdiction, if it "has dismissed all claims over which it has original jurisdiction," or if "in exceptional circumstances, there are compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c)(3), (4). As to (c)(3), "the district court must decline to decide the pendant state claims unless considerations of judicial economy, convenience and fairness to the parties provide an affirmative justification for [exercising supplemental jurisdiction]." *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (emphasis in original). As to (c)(4), a court must evaluate "economy, convenience, fairness, and comity." *Mathis v. Camden County*, 2009 WL 4667094 at *9 (D.N.J. 2009).

For the reasons set forth above, Plaintiff has failed to plead any claims in the Amended Complaint over which this Court has original jurisdiction. Therefore, the Court "must" decline to exercise supplemental jurisdiction over the pendant state law claims. As this case is in its earliest pleading stage, the (c)(4) considerations also weigh in favor of declining supplemental jurisdiction.

3. Leave to Amend

Ordinarily, leave to amend should be liberally granted. Indeed, if a civil rights complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile. *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004); *accord Grayson v. Mayview State Hosp.*, 293 F.3d 103 (3d Cir. 2002). A district court must provide the plaintiff with this opportunity even if the plaintiff does not seek leave to amend. *Id*.

In this case, however, the Court has already given Plaintiff one opportunity to file an Amended Complaint and has placed Plaintiff on notice that it is unlikely to permit any subsequent amendments, such that Plaintiff must plead sufficient factual allegations to render the claim(s) plausible. As explained above, Plaintiff has again failed to plead a viable federal claim. A third bite at the apple would be futile and inequitable and therefore further amendment will not be permitted. The Court will: (1) dismiss all claims against Supancic and Haywood as untimely; (2) dismiss Count 1 with prejudice; and (3) remand this case to the state court on the remaining claims forthwith.

Conclusion

In accordance with the foregoing, the MOTION TO DISMISS THE FIRST AMENDED COMPLAINT (ECF No. 19) filed by Defendants Westmoreland County Children's Bureau ("WCCB"), Westmoreland County, Deanna Supancic and Shannon Haywood will be **GRANTED**. All claims against Supancic and Haywood will be dismissed as untimely. All claims against WCCB will be dismissed as it is not a separate legal entity. Count 1 of the Amended Complaint will be **DISMISSED with prejudice**. The Court will decline to exercise

supplemental jurisdiction over Counts 2, 3 and 4 of the Amended Complaint. The case will be **REMANDED** to the Court of Common Pleas of Indiana County, Pennsylvania forthwith.

An appropriate Order follows.

McVerry, S.J.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **VICKIE JOY FETTERMAN**<br>*Administratrix of the ESTATE OF NATALEE KAY MIBRODA, Deceased*,<br>    Plaintiff,<br><br>v<br><br>**WESTMORELAND COUNTY CHILDREN'S BUREAU, WESTMORELAND COUNTY, DEANNA SUPANCIC, individually and as an employee of WCCB, SHANNON HAYWOOD, individually and as an employee of WCCB, CLAYTON MIBRODA, KAYLA JO LIGHTENFELS** *and* **BETTY JO LIGHTENFELS,**<br>    Defendants. | 2:15-cv-773 |

## ORDER OF COURT

AND NOW, this 6th day of January, 2016, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED and DECREED** that the MOTION TO DISMISS THE FIRST AMENDED COMPLAINT (ECF No. 19) filed by Defendants Westmoreland County Children's Bureau ("WCCB"), Westmoreland County, Deanna Supancic and Shannon Haywood is **GRANTED**. All claims against Supancic and Haywood are dismissed as untimely. All claims against WCCB are dismissed as it is not a separate legal entity. Count 1 of the Amended Complaint is **DISMISSED with prejudice** for failure to state a valid claim. The Court declines to exercise supplemental jurisdiction over Counts 2, 3 and 4 of the Amended Complaint. The case is hereby **REMANDED** to the Court of Common Pleas of Indiana County, Pennsylvania forthwith. The clerk shall docket this federal case, Civ. No. 15-773, closed.

BY THE COURT:

s/Terrence F. McVerry
Senior United States District Judge

cc:     **Brian D. Kent, Esquire**
        Email: bkent@lbk-law.com

        **Thomas P. Pellis, Esquire**
        Email: tpellis@mdbbe.com